W. Irving Herskovits v. Commissioner.
W. Herskovits v. Commissioner
Docket No. 13898.
United States Tax Court
1948 Tax Ct. Memo LEXIS 181; 7 T.C.M. (CCH) 306; T.C.M. (RIA) 48088; May 26, 1948
*181 Family partnership: Capital. - Contribution by taxpayer's wife for their son of $20,000 to new business did not establish a partnership between the taxpayer and his son. It is held that the contribution was merely shifting of family funds. Jacob Meadow, Esq., for the petitioner. Sheldon V. Ekman, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The Commissioner determined a deficiency of $12,942.24 in petitioner's income and victory tax for 1943, in part by including in income the entire net earnings of a business conducted under the form of a partnership in which petitioner's son held a 40 percent interest according to an agreement of partnership. Although the son had no control and rendered no services, petitioner contends that the partnership should be recognized for tax purposes because of a contribution of $20,000 to capital, allegedly a gift to the son from his mother. Findings of Fact Petitioner, an individual residing at New York, New York, filed his income and victory tax return for 1943 with the collector of internal revenue for the third district of New York. Since 1912 he has been actively engaged in *182 a business of purchasing and selling furs and skins. This business was established about 1888 by his father who first operated it individually and after 1909 took into it as partners four sons as each became of age. In 1913 the business was incorporated as Albert Herskovits & Sons, Inc., and the sons received shares of stock. In 1936 petitioner's brother, Jerome Herbert, who had engaged for many years in the real estate business, decided to sell all but one of his 500 shares in Albert Herskovits & Sons, Inc., to relatives. In carrying out this intention, he made a written contract on December 1, 1936, with petitioner's wife, Mildred F. Herskovits, and with petitioner to sell to the wife 230 shares for $34,232.56. His receipt of $2,232.56 was recited in the contract, and the remaining $32,000, represented by 6 percent notes, was payable in quarterly installments of $2,666.66. The notes were endorsed by petitioner and were further secured by the stock certificate endorsed in blank by the seller and deposited with an escrow agent for delivery to the wife upon full payment of the notes. Until such payment all dividends on the shares were payable to the escrow agent for application on *183 the notes. In the ninth paragraph of the contract, petitioner, as party of the third part, declared that he endorsed the notes to induce Jerome Herbert to sell the shares, and: "* * * does hereby guarantee the prompt and punctual payment of all of said promissory notes, * * *, it being agreed that the liability of the party of the third part shall for all intents and purposes be considered a primary obligation with the same force and effect as though the party of the third part had executed this contract as purchaser, and had signed the promissory notes as maker. * * *" When the purchase contract was made, petitioner's wife had sufficient property to pay the recited price of the shares. Since marriage in 1922, petitioner has given her money from time to time; she saved much of it, and had income of her own. The stock certificate was held by the escrow agent until the price was paid in full, and was delivered to petitioner's wife in 1942. Shortly thereafter the corporation was completely liquidated and dissolved, and its assets were distributed among the shareholders. On December 14, 1942, petitioner's wife received as a liquidating dividend the corporation's check for $20,000, *184 signed by Max Herskovits as president and petitioner as vice-president and treasurer. She immediately endorsed and deposited this check to the account of W. Irving Herskovitz Fur Co., a firm name under which petitioner planned to continue the fur business. She later received and cashed two checks of the corporation, dated January 5, 1944, for $1,460.82 and $74.57, respectively, representing additional liquidating dividends. Petitioner and his wife were not on good terms in 1942; they later separated, and she now resides in California. Petitioner had an only son, Monroe, whom he wished to associate with him as a partner in the fur business. Prior to the liquidation of the corporation he and the son, then about 21 years of age, having discussed such an arrangement, on November 2, 1942, signed a formal partnership agreement to conduct a business of buying and selling furs and skins under the firm name of W. Irving Herskovits Fur Co. It was agreed that petitioner contribute $180,000 and the son $20,000 to the capital of the business, and that profits and losses be shared in the proportion of 60 percent and 40 percent, respectively. The entire management, operation and control of the *185 business was vested in petitioner, and all funds were to be deposited in a bank account, carried in the firm name, against which petitioner alone was empowered to draw checks. During school vacations the son had learned something of the fur business, but was without substantial experience. He was a student at Harvard University until enlisting in the United States Army on May 28, 1942. He remained on active military duty until February 1946, and contributed no services to the business until his discharge from the Army. Since then he has taken an active part in it, making business trips and holding business interviews, and has had authority to sign checks against the firm's bank account. The $20,000 check of the corporation, payable to the wife, endorsed by her and deposited to the account of W. Irving Herskovits Fur Co., was treated as the son's contribution to capital. When the partnership agreement was signed, the son had very little money of his own. In determining petitioner's income and victory tax for 1943, the Commissioner included in his income all the net earnings of W. Irving Herskovits Fur Company. Opinion Respondent gave no recognition to the partnership agreement *186 in determining petitioner's taxable income for 1943, and defends his inclusion of all the earnings of W. Irving Herskovits Fur Company in petitioner's income by the argument that the son exercised no control over the business, made no contribution of vital services or capital originating with him, and hence under the tests approved in and , his status as a partner should not be recognized for tax purposes. Petitioner tacitly concedes, as he must, that the son had no power of management, operation or control, for these powers are vested by the agreement in petitioner alone. It is equally clear that in 1943 the son did not and had not rendered any services to the business, for he was on active military duty from the time of the agreement until 1946. But petitioner correctly contends that under the cited opinions a substantial contribution to capital is sufficient to qualify the son as a partner for tax purposes, and he earnestly argues that the son made such a contribution by virtue of his mother's deposit of the $20,000 corporation check to the partnership's credit. As petitioner did *187 not own this money, the argument runs, there is no basis whatever for imputing to him the income of the business interest which it purchased. He cites as to this effect , recognizing as partners a taxpayer's wife and daughters to whom the taxpayer's brothers had transferred fractions of their interest in a partnership, and , recognizing as a partner a taxpayer's wife who had acquired a 25 percent partnership interest from the taxpayer's uncle. Petitioner's contention, be it noted, is based entirely on the factual premise that the son constructively received a gift of $20,000 from his mother and pursuant to the partnership agreement furnished that amount to business capital, thereby acquiring a 40 percent interest for only 10 percent of the capital contributed and rendering no services at all until 1946. We have not found that premise as a fact. The documentary evidence casts substantial doubt on the bona fides of the wife's ostensible purchase of Jerome Herfbert's 230 corporation shares and is significantly deficient in disclosing the source of payment for those *188 shares. The contract of December 1, 1936, whereby the wife purported to buy them, contemplated that the stock certificate, endorsed in blank, would be held by an escrow agent until all installments of the price, represented by notes, should be paid. The notes are not in evidence, but petitioner testified that he endorsed them, and a provision of the purchase contract shows that he assumed a primary obligation as "purchaser" of the shares and "maker of the notes. He testified that his wife had ample means to pay the price in 1936. She did not do so, however, and indeed there is no evidence of when or how the notes were paid. While the last one fell due presumably early in 1940, petitioner on cross examination expressed his "belief" that the certificate for stock was not delivered to his wife until 1942, shortly before the liquidation of the corporation. Asked on direct examination if he "did not provide monies after this agreement was entered into for the purchase or acquisition of this stock", he answered categorically "no". When cross-examined on the same subject, he said merely: "She had income of her own", adding that she saved money which he gave her. The seller, Jerome Herbert, *189 testified as follows: "Q. Who paid you the money on the notes on the sale of the stock you sold Mildred Herskovits? "A. Mildred Herskovits, I believe. "Q. Are you sure W. Irving [petitioner] did not pay it to you? "A. I do not recall. "Q. You do not recall who gave you the money? "A. No." On this record we are unable to find affirmatively that Mildred Herskovits was beneficial owner of the shares or that payment for them was made with funds which did not orginate with petitioner. We are likewise unable to find that the $20,000 was given by Mildred Herskovits to the son even if it be assumed that she was beneficial owner of the check. The documentary evidence fails so to indicate, for on receipt she immediately endorsed the check to W. Irving Herskovits Fur Co., and it was deposited in the company's bank account which petitioner alone could draw. Petitioner testified that his wife was aware of the terms of the partnership and that in preliminary discussions the son referred to her agreement to give him the $20,000 for his contribution. This uncorroborated testimony of petitioner constitutes the sole evidence that the son's contribution was a gift from his mother. Neither *190 mother nor son testified. It is nothing more than petitioner's statement about his estranged wife's intent in respect of a check in which her interest is not free from doubt and which conveyed funds to an account not subject to the alleged donee's control either when deposited or at any time during 1943. Viewing the record as a whole, we perceive in the transfer and partnership agreement nothing more that "a mere paper recallocation of income among family members." Petitioner gave his wife money from time to time. She signed a contract to purchase his brother's corporate shares, but the contract contained provisions suggestive that she may have acted merely as a nominee for petitioner. Apparently the shares were never transferred to her name. Testimony about payment for them is vague and unconvincing. The stock certificate was not released to her until shortly before the corporation was liquidated. As liquidating officers, petitioner and his brother signed the $20,000 check which she immediately endorsed and deposited in an account subject to petitioner's sole control some weeks after petitioner and his son had signed the partnership agreement. *191 We cannot find on this record that the son made a contribution to capital otherwise than by a mere shifting of family funds, carried out at petitioner's direction. Cf. , cert. den. ; , aff'd. (C.C.A., 5th Cir.), ; , aff'd. C.C.A., 6th Cir.), ; . Decision will be entered for respondent.